**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL PALL, MARY PALL, and** | ) | |
| **EMILY PALL, a minor, by her parents** | ) | |
| **and next friends, Michael Pall and** | ) | |
| **Mary Pall,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 08 CV 3778** |
| **v.** | ) | **Judge David H. Coar** |
| | ) | **Magistrate Judge Ashman** |
| **THE VILLAGE OF INDIAN HEAD PARK** | ) | |
| **an Illinois Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

NOW COMES the Defendant, VILLAGE OF INDIAN HEAD PARK, (hereinafter referred to as the "Village") by and through its attorneys, Angelo F. DelMarto, Richard J. Ramello and Michael K. Durkin, and in response to Plaintiffs' Motion for Preliminary Injunction, states as follows:

## INTRODUCTION

The Palls have alleged that they have an eight year old daughter, Emily, who has Down Syndrome. (Pl.'s Mem. P. 1.) They have alleged that she qualifies as disabled under the Fair Housing Act ("FHA") (Pl.'s Mem. P. 3), and they currently reside in the Village of Indian Head Park. The Village enacted an ordinance in 1964 which prohibits the erection of fences. It is one of the unique characteristics of the Village. Under certain circumstances, such as to enclose a swimming pool or for safety, a fence may be erected. However, even when a fence is permitted, it is highly regulated. The Palls have been residents of the Village for approximately ten years, and were aware of the fact that the Village only allows fences under very limited circumstances. (Mary Fuller-Pall Dep., P. 71).

The Palls sought permission to erect a fence around the entire perimeter of their backyard, claiming it was to ensure the safety of their daughter, Emily, who has been

known to wander off from school and from their new home when cleaning people did not secure a door.  Additionally, the Palls claim that Emily would benefit from outdoor play in their backyard with a fence.  On June 5, 2007, the Palls, as contract purchasers of the property located at 6472 Apache Drive, Indian Head Park, attended the Village Planning and Zoning Commission ("Commission") hearing wherein the Commission was to consider the Palls' petition for a safety fence.  The Palls requested to erect a tan or grey, five-foot high fence around the rear boundary of their backyard.  At that hearing, the commissioners determined that they needed additional information not provided by the Palls, and the Commission voted "no" to recommending a safety fence to the Indian Head Park Board of Trustees.  However, the Commission left the Palls' request open for additional consideration.

On October 2, 2007, the Palls, represented by counsel, again attended the Planning and Zoning Commission hearing wherein the Commission was to continue their consideration of  the Palls' petition to erect a safety fence.  This time, the Palls requested to erect a black, wrought-iron-type, aluminum fence with alternate spear point pickets around the entire perimeter of their backyard.  It was indicated to the Commission that a fence would be the best option for Emily, as it would demonstrate physical boundaries; however, the Palls made it clear that close supervision and parental care would always be needed to ensure Emily's safety, and that Emily would never be left alone in the yard. (Pl.'s Mem. Ex. "C.")

At that meeting, correspondence from Dr. Lisa Franco, Emily's physician, was entered into the record.  In that correspondence, Dr. Franco merely states that Emily "requires the boundaries of her environment to be safely designated by a fence."  (Pl.'s Mem. Exhibit "C" P. 3.)  Additionally, correspondence from Jennifer Ames, Director of Special Education at LaGrange Highlands School District 106, was read into the record. That correspondence merely states that "accommodations such as providing structure, limits and physical boundaries such as fences in outside yards are necessary to allow her access to major life activities such as age appropriate outdoor play as well as to insure her safety, health and well being."  (Pl.'s Mem. Ex. "C" P. 4.)  Jennifer Ames further testified at that hearing that "a fenced yard would provide structure for Emily with a definitive outline setting forth how far she can go because Emily needs to have a physical barrier."

(Pl.'s Mem. Ex. "C" P. 4.)  Neither Dr. Franco nor Ms. Ames indicated that Emily could only benefit from the entire yard being fenced, nor did they explain the medical necessity for a fence.

Furthermore, at that meeting, Village counsel indicated that, pursuant to the Village Code, requests for fences are to be considered in the same manner as requests for variances.  Therefore, it was the petitioner's burden to enter into the record the evidence necessary to show that standards applicable to variations have been met.  Those standards include (1) that the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations governing the district in which it is located; (2) the plight of the owner is due to unusual circumstances; (3) the variation, if granted, will not alter the essential character of the locality; (4) the particular physical surroundings, shape or topographical conditions of the specific property involved would bring a particular hardship upon the owner as distinguished from a mere inconvenience if the strict letter of the regulation were to be carried out; (5) the conditions upon which the petition for variation is based would not be applicable generally to other property within the same zoning classification; (6) the purpose of the variation is not based exclusively upon a desire to make money out of the property; (7) the alleged difficulty or hardship has not been created by any person presently having an interest in the property; (8) the granting of the variation will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located; and (9) the proposed variation will not impair an adequate supply of light and air to adjacent property, or substantially increase the danger of fire, or otherwise endanger the public safety, or substantially diminish or impair property values within the neighborhood.  (Village of Indian Head Park Mun. Code., Sect. 17.12.120 and 17.24.060.)  However, counsel for the Palls' indicated that he did not believe the standards were applicable to requests for fences.  Consequently, he did not enter any further information into evidence.  (Pl.'s Mem., Ex. "C" P. 11.)

After considering the Palls' proposal, the Commission determined that Emily would be safe and could enjoy outdoor activities just as easily within a smaller area than that requested by the Palls while still maintaining the integrity and unique characteristics of the Village.  The Commission did not deny the Palls' request to erect a fence.  Rather,

they offered a reasonable accommodation to the Palls. The Commission would recommend to the Village Board of Trustees the construction of a fence that would extend from the back of the Palls' house to a depth of twenty five feet. This would allow Emily the use of an area in her backyard that is approximately 1,200 square feet. The Commission recommendation was considered by the Village Board of Trustees on October 11, 2007. At that meeting, the Village Board voted unanimously to allow the Palls to erect a safety fence pursuant to the Commission's recommendation. The Palls rejected the Village's reasonable accommodation. They have filed a Motion for a Preliminary Injunction and a Complaint requesting, *inter alia*, a permanent injunction to allow them to construct a fence around the entire perimeter of their backyard. (Pl.'s Mem. Ex. "D.")

Plaintiffs allege that the Village has discriminated against them in violation of the FHA. (Pl.'s Mem. P. 3.) However, the Village proposed a reasonable accommodation in response to the Palls' request for a fence around the entire perimeter of their backyard based on information provided to the Indian Head Park Planning and Zoning Commission and Village Board of Trustees, as depicted on Exhibit "A" attached hereto. This is all that the Village is required to do under the FHA and, as such, the Village has not violated the FHA by discriminating against the Pall family.

At a hearing on July 16, 2008, this Court determined that a hearing on the Plaintiffs' Motion for Preliminary Injunction and final hearing for permanent injunction would be combined. Therefore, Defendant addresses Plaintiffs' request for a permanent injunction raised in their Complaint.

## STANDARD FOR ISSUANCE OF PERMANENT INJUNCTION

In a motion for permanent injunction, a plaintiff must satisfy a four-factor test: "(1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Hummel vs. Donahue,* 2008 WL 2518268, at *8 (S.D.Ind. 2008). "In an action for permanent injunction, the plaintiff must prove his or her case by clear and

convincing evidence." *Ohio Hospital Assoc. vs. Ohio Bureau of Workers'*
*Compensation,* 2007 Ohio 1499, P. 16 (Ohio App. 3/30/2007).

## ARGUMENT

### I.      Plaintiffs Fail to Establish They have Suffered Irreparable Injury

Plaintiffs allege that the Defendant's "actions deny Emily the therapeutic benefits
of outdoor play in her own backyard." They claim that under their proposal, Emily's
safety would be ensured, and she would be able to play with other children. (Pls.'s Mem
P. 6 & 7). However, Plaintiffs have not been denied their request for a fence. Plaintiffs
fail to state how the Village's accommodation would not keep Emily safe, how it denies
Emily the therapeutic benefits of outdoor play, or how it prohibits her from playing with
other children.

The FHA "requires a reasonable accommodation to zoning rules when necessary
to afford a handicapped person the 'equal opportunity' to obtain housing. *Wisconsin*
*Community Services, Inc. vs. City of Milwaukee,* No. 04-1966, P. 12 (7th Cir. 2006). "The
concept of necessity requires at a minimum the showing that the desired accommodation
will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects
of the disability." *Bronk vs. Ineichen,* 54 F.3d 425, 429 (C.A.7 (Wis.) 1995). "If the
proposed accommodation provides no direct amelioration of a disability's effect, it
cannot be said to be necessary." *Wisconsin Community Services, Inc. vs. City of*
*Milwaukee,* No. 04-1966, P. 20 (7th Cir. 2006). "The statute does not talk in terms of
accommodations and/or modifications that are simply convenient to a handicapped
individual's use or enjoyment of the property. Rather, discrimination occurs when the
handicapped individual has been deprived of the right to make a reasonable modification,
or there has not been a reasonable accommodation, that is *necessary* to full enjoyment of
the premises or an equal opportunity to use and enjoy a dwelling as is afforded to non-
handicapped persons." *Gavin vs. Spring Ridge Conservancy, Inc.,* 934 F.Supp. 685, 687
(D.Md. 1995). Plaintiffs fail to establish that Emily needs the entire backyard in order to
play with friends or receive therapeutic benefits. In other words, they have failed to show
that their request for a fence encompassing their entire backyard is necessary. The
Plaintiffs in an FHA "reasonable accommodation case must establish a nexus between

accommodations that he or she is requesting, and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." *Lapid* at 459.

Although Plaintiffs state that Emily's doctor, Dr. Lisa A. Franco, M.D. indicated that "Emily's best interest would be served by allowing Emily to play in her *entire backyard area"* (emphasis added), this misstates what Dr. Franco actually said. (Pl.'s Mem. P. 8). Dr. Franco's correspondence merely states that "it would be in Emily's best interest to be allowed to play in her yard." (Def. Ex. "B".) Nowhere in that correspondence does Dr. Franco state that Emily would only benefit from the use of her *entire* backyard. Additionally, in a letter from Jennifer Ames, Director of Special Education at LaGrange Highlands School District 106, Ms. Ames states that "accommodations such as providing structure, limits and physical boundaries such as fences in outside yards are necessary to allow . . . outdoor play . . . as well as to insure her safety, health and well being." (Pl. Ex. "B," P. 4). Ms. Ames did not indicate that Emily could only benefit from playing in an area that encompasses the Palls' entire backyard. Plaintiffs fail to show how a fence around their entire backyard is necessary, or how Emily would not receive therapeutic benefits by playing in a smaller area than that proposed by the Palls.

Furthermore, in relation to Emily playing with other children, Mr. Pall stated that Emily sometimes has friends over at their house – and they do not play in their backyard because supervision from either himself or Mrs. Pall is required. (Michael Pall Dep., P. 82.) Mr. Pall later stated that although Emily does not play in their backyard with friends, she plays in the yards of other children with adult supervision. (Michael Pall Dep., P. 108.) Mrs. Pall, however, indicated that Emily never goes over to a friend's house. (Mary Fuller-Pall Dep., P. 47.) Despite these inconsistent statements, one thing is clear, Emily could play in her backyard with friends as long as she is supervised. As Mrs. Pall stated, even with a fenced-in yard, Emily would never be left alone. (Pl.'s Mem. Ex. "D" P. 5). Emily functions at the level of a three year old and needs to be supervised regardless of whether the yard is fenced or not. As such, there is nothing preventing Emily from playing with other children. Therefore, the lack of a fence, or a smaller size fenced-in area, does not prevent Emily from playing with others. Although it may be more convenient for the Palls, it is not necessary.

Plaintiffs have failed to establish that a fence around their entire backyard is necessary so that they may use and enjoy housing in the area. In fact, Mrs. Pall even stated that the lack of a fence in their backyard does not prevent the family from residing in Indian Head Park. (Mary Fuller-Pall Dep., P. 72.)

The accommodation offered to the Palls would allow Emily to receive therapeutic benefits, play outdoors, and would ensure that, should Emily wander out of the house, she would be safe. Defendants have reasonably accommodated the Palls by allowing the construction of a fence, albeit smaller than that desired, so that Emily can enjoy outdoor activities safely. As Plaintiffs fail to demonstrate that they have been irreparably harmed, their request for a permanent injunction should be denied.

## II.    The Plaintiffs Fail to Establish That There is no Adequate Remedy at Law

Although Plaintiffs allege there was no adequate remedy at law available to them, there was, and they availed themselves of that remedy. Through this remedy, namely the hearing process in the Village of Indian Head Park, the Plaintiffs received the relief they sought. They were granted permission to build a fence, albeit around a smaller area than that which was requested. Plaintiffs allege Defendant discriminated against them in violation of the FHA because they were not granted permission to erect a fence around the entire perimeter of their yard. This does not rise to discriminatory conduct under the FHA. Discrimination under the FHA is defined as a "refusal to make or permit a reasonable modification or accommodation if and when such 'may be necessary to afford such person' full enjoyment of a dwelling or equal opportunity to use and enjoy it." *Gavin vs. Spring Ridge Conservancy, Inc.,* 934 F.Supp. 685, 687 (D.Md. 1995). "The reasonable accommodation inquiry is highly fact-specific requiring a case-by-case determination." *Sporn vs. Ocean Colony Condominium Assoc.,* 173 F.Supp.2d 244, 250 (D.N.J. 2001).

In determining what is a reasonable accommodation under the Act, the courts consider many factors. Plaintiffs state that "to establish a prima facie case of discrimination under § 3604 of the Fair Housing Act, they must demonstrate (1) the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability; and (2) the benefit to the plaintiff outweighs the

cost to Defendant." (Pl.'s Mem. P. 3). Plaintiffs cite *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995) in support of this statement. However, Plaintiffs misstate the law. That case actually states that "The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Id.* Cost to the defendant and benefit to the plaintiff are only two factors that may be considered in determining what is meant by "reasonable" under the Act. The courts have stated that when determining whether a proffered accommodation is reasonable, "the municipality is required to prove that it could not have granted the variance without: '(1) imposing undue financial and administrative burdens;' (2) 'imposing an 'undue hardship' . . . ; or (3) 'requiring a fundamental alteration in the nature of the [zoning] program.'" *Lapid-Laurel, LLC v. Zoning Bd. Of Adj. of Tp. Scotch,* 284 F. 3d 442 (3rd Cir., 2002), quoting *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1104 (3d Cir. 1996). To grant the Plaintiffs' request to fence their entire backyard with no conditions attached would constitute a fundamental alteration to their zoning code. Furthermore, the Village does not allow non-handicapped individuals the unconditional right to erect a fence; the Defendant treats all requests for fences in the same manner. "An accommodation should not 'extend a preference to handicapped residents [relative to other residents], as opposed to affording them equal opportunity' and 'accommodations that go beyond affording a handicapped tenant 'an equal opportunity to use and enjoy a dwelling' are not required by the Act." *Sporn vs. Ocean Colony Condominium Assoc., et al.,* 173 F.Supp.2d 244 (D.N.J. 2001). What Plaintiffs are requesting is treatment that non-handicapped persons do not receive, and the Defendant is not required to grant such a request under the FHA. The Defendants have afforded the Plaintiffs an opportunity that is equal to that which is given to non-handicapped individuals; the Defendants are not required to do more.

    *Loren v. Sasser*, 309 F.3d 1296 (11th Cir., 2002), is analogous to the instant case. In that case, plaintiffs were requesting permission to erect a chain link fence in their front yard in order to provide two handicapped residences the benefit of the outdoors. Defendants in that case denied the request, but presented the petitioners with a reasonable accommodation: they could place a fence on the side or in the back of their house. In denying Plaintiff's claim of a violation of the Act, the court stated that the reasonable

accommodation proposed by the defendants would "accomplish the same purposes by providing an opportunity to be outdoors safely . . ." *Id.* at 1303. The court further stated that while erecting a fence on the side or rear of the plaintiff's house "may not be appellants' preference, it nevertheless would be a reasonable accommodation for the asserted needs of the handicapped appellants." *Id.*

As in *Loren*, the plaintiffs in the instant case would prefer to place a fence around the entire perimeter of their backyard. However, the Village has proposed a reasonable accommodation that would accomplish the asserted needs of Emily, i.e. safety, while maintaining the integrity of the community's park-like atmosphere.

The Plaintiffs have failed to establish that the fence proposed by the Village is not an adequate remedy at law and, as such, their request for a permanent injunction should be denied.

### III. The Plaintiffs fail to Establish that a Remedy in Equity is Warranted When the Hardships Between the Plaintiff and the Defendants are Considered

Plaintiffs fail to establish that the hardship they would suffer outweighs the hardship to Defendants. Plaintiffs allege that they are entitled to equitable relief because the Village discriminated against them in violation of the FHA. As stated *supra*, Defendant offered Plaintiffs a reasonable accommodation. The fact that Plaintiffs are not receiving what they would prefer does not rise to discriminatory conduct under the FHA. Under the FHA, whether a requested accommodation is reasonable "requires balancing the needs of the parties." *Oconomowoc Residential Programs, Inc. vs. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002), quoting *Dadian vs. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001).

Plaintiffs allege that the "Village's refusal to permit construction of the fence around the entire backyard has effectively denied Emily and the Palls an equal opportunity to use and enjoy their home." (Pl.'s Mem. P. 3). They further state that the "Village had an 'affirmative obligation' to provide the requested accommodation because it would not impose an undue burden." (Pl.'s Mem. P. 4). In making this statement, however, Plaintiffs again misstate the law. The Village does not have an "affirmative obligation" to grant the requested accommodation simply because it would not impose an

undue burden.  The case cited by the Plaintiffs standing for this proposition, *U.S.   v. California Mobile Home Park Management Co.,* 29 F.3d 1413, 1418 (9th Cir. 1994), dealt solely with whether the defendants were reasonable when they refused to waive certain fees for a handicapped individual that were applicable to all residents.  The court considered only whether the defendant's refusal to waive fees for a handicapped person created an undue financial hardship; it did not address the other factors that are to be considered.  The Village has never stated that allowing the Palls to enclose their entire backyard would be an undue financial or administrative burden.  Rather, the Defendants have always maintained that allowing a fence around the entire perimeter of the Palls' backyard would require a fundamental alteration of their zoning program.

Plaintiffs state that the "Village can not deny the reasonable accommodation request of the Pall Proposal because they consider themselves a community without fences; or out of aesthetic concern for a fence not enclosing a swimming pool." (Pl.'s Mem. P. 4).  However, "in enacting the FHA, Congress clearly did not contemplate abandoning the deference that courts have traditionally shown to such local zoning codes.  And the FHA does not provide a 'blanket waiver of all facially neutral zoning policies and rules, regardless of the facts." *Bryant Woods Inn, Inc. v. Howard County, Md*., 124 F.3d 597, 603 (C.A.4 (Md.), 1997.  As that court stated, to do so "would give the disabled 'carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary.'" *Id.*

The Palls are demanding that they be allowed to unconditionally erect a five foot high fence around the entire perimeter of their backyard.  This is essentially asking for a blanket waiver of a facially neutral zoning ordinance.  "Seeking to recognize local authorities' ability to regulate land use and without unnecessarily undermining the benign purposes of such neutral regulations, Congress required only that local government make 'reasonable accommodation' to afford persons with handicaps 'equal opportunity to use and enjoy' housing in those communities." *Id.*  That is exactly what the Village did.  Based upon the Palls' testimony at the Planning and Zoning Committee hearings regarding their needs, the Village accommodated the Palls and allowed them to erect a fence, providing them with the same opportunity that non-handicapped individuals receive.     Defendants provided a reasonable accommodation to the Palls, and "the

requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person." *Bronk vs. Ineichen,* 54 F.3d 425, 429 (C.A.7 (Wis.) 1995), quoting *United States vs. Village of Palatine,* 37 F.3d 1230, 1234 (7th Cir. 1994).    Even though Plaintiffs state that if the Palls are unable to erect a fence around the entire perimeter of their yard, "they will move to a community which will allow them to erect a safety fence to enclose their backyard."   (Pl.'s Mem. P. 4). However, this statement contradicts Mrs. Palls' deposition testimony, wherein she states that the lack of a fence in their backyard does not prevent the family from residing in Indian Head Park.  (Mary Fuller-Pall Dep., P. 72.)

Plaintiffs appear to be saying that the Village's aesthetic concerns are merely pretext, because the Village allows fences around pools and are willing to allow the Palls to erect a smaller fence.   However, Plaintiffs fail to state that fences around pools are highly regulated, including their location.  The Village ordinance states that a fence must be "erected along the periphery of the pool walk or terrace area" and that in "no case shall the required safety fence for a single-family residence be located more than twelve feet from the pool wall."  (Village of Indian Head Park Mun. Code, Sec. 15.21.010).  The size and placement of the pool and erection of the fence are strictly regulated. Additionally, when safety fences are permitted, they are highly regulated as well.   The code provision pertaining to safety fences states that fences are prohibited except for those "required for safety as determined and *upon such terms and conditions as may be imposed* . . ."   (Emphasis added.)   (Village of Indian Head Park Mun. Code, Sec. 17.12.120).  As can be seen, even when fences are allowed to be erected around pools or for safety reasons, the fence is not allowed to be constructed around the perimeter of the yard as is requested by the Defendants, and it may be subject to certain terms and conditions imposed by the Village.  The Village treats all requests for a fence in the same manner and, when allowed, they are strictly regulated, including their location.   As a reasonable accommodation, the Defendant has allowed the Plaintiffs to construct a fence consistent with the width of their house (approximately fifty feet) and twenty five feet deep, for a total square footage of approximately 1,200 (Def. Ex. "A"). This would be approximately what is allowed for fences around pools.  Zoning is a legitimate concern to municipalities, and "a municipality can if it wants try to retard the erosion of its land-use

plans by being chintzy about permitting departures from its existing zoning." *Hemisphere Building Co. vs. Village of Richton Park,* 171 F.3d 437, 439 (C.A.7 (Ill.) 1999).

Plaintiffs allege that "Emily's deprivation of therapeutic benefits gained by using her entire backyard substantially outweighs any interest of the Village in restricting fences to [those] enclosing swimming pools." (Pl.'s Mem. P. 9). Further, Plaintiffs state "the safety of a disabled child clearly outweighs the desire for the aesthetics of a 'fence-less' community." (Pl.'s Mem. P. 9). Defendants are not depriving Emily of therapeutic benefits; Plaintiffs fail to show how the harm Emily would suffer by using only a portion of her backyard to receive therapeutic benefits rather than if she were allowed the entire use of her backyard. Emily is an eight year old child with Down Syndrome who, by Plaintiffs' own admission, requires constant supervision. Plaintiffs appear to allege that, were they allowed to erect the fence around the entire perimeter of their backyard, Emily would be free to play outdoors unsupervised. Obviously, this is not the case. The Plaintiffs fail to show how a fence around the entire perimeter of their yard would make Emily any safer than a fence around an area approximately 1,200 square feet in size. Regardless of the size of the area, Emily will still need constant supervision while outside.

In balancing the interests of the parties in this case, it is clear that the Village's interest outweighs any perceived harm Emily would suffer should she only be allowed to play in a portion of her backyard.

### IV.    Plaintiffs Fail To Establish That the Public Interest Would Not Be Disserved

Plaintiffs fail to establish that the injunction will not harm the public interest. At issue in this case is the competing interests of accommodating Emily so that she may utilize her entire backyard unsupervised, and the Defendant's desire to maintain the characteristics of the Village and adhere to their long-standing zoning program. Plaintiffs are essentially asking for the Village to waive any and all conditions placed on the erection of the fence, in contravention of the Village Zoning Code. Zoning issues affect the entire neighborhood and to allow the Palls to erect a fence around the entire perimeter

of their yard would affect all the adjoining residences.    In addition, it would fundamentally change the open yard characteristics of the community.

Piecemeal zoning has been defined by this Court as "a slippery slope, and [a] Village is not required to step onto it.  A standard argument against piecemeal rezoning is that by allowing the character of a neighborhood to change, it paves the way for further requests for rezoning, until the land-use plan that generated the zoning is completely eroded." *Hemisphere Building Co., Inc. vs. Village of Richton Park,* 171 F.3d 437, 439 (C.A.7 (Ill.) 1999).  The court further stated that "A municipality can if it wants try to retard the erosion of its land-use plans by being chintzy about permitting departures from its existing zoning."  Mrs. Pall stated that there really isn't any room for compromise in relation to the area to be enclosed by a fence.  She simply stated, "it's our property." (Mary Fuller-Pall Dep., P. 71.)  However, to allow the Palls to erect a fence without any conditions affects the entire neighborhood, not just their property.

The Plaintiffs are requesting the Defendant completely waive any restrictions on their fence.  The public interest would be disserved by allowing them to do so.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant, Village of Indian Head Park, respectfully requests that this Honorable Court deny Plaintiffs' Motion for a Preliminary Injunction and maintain the status quo until this Court determines whether or not the Village's accommodation is reasonable.



s/   Angelo Del Marto
Angelo Del Marto

Richard J. Ramello (Attorney No. 3124818)
Michael K. Durkin (Attorney No. 3121686)
Angelo Del Marto (Attorney No. 6191333)
Storino, Ramello & Durkin
9501 W. Devon Avenue
Suite 800
Rosemont, Illinois  60018
Telephone:  847-318-9500
Fax:  847-318-9509

132319-1                                    13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Wednesday, August 20, 2008, I electronically filed **Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

James C. Whiteside, Senior Law Students, The John Marshall Law School, Fair Housing Legal Clinic, 28 East Jackson Boulevard, Suite 500, Chicago Illinois 60604; 6whiteside@jmls.com

Paul A. Rettberg, QUERREY & HARROW, LTD., 175 West Jackson Boulevard, Suite 1600, Chicago, Illinois 60604-2827; prettberg@querrey.com

Stacey McGlynn Atkins, QUERREY & HARROW, LTD., 175 West Jackson Boulevard, Suite 1600, Chicago, Illinois 60604-2827; satkins@querrey.com

Jason C. Callicoat, QUERREY & HARROW, LTD., 175 West Jackson Boulevard, Suite 1600, Chicago, Illinois 60604-2827; jcallicoat@querrey.com

____s/___Angelo Del Marto_____
Angelo Del Marto

Richard J. Ramello (Attorney No. 3124818)
Michael K. Durkin (Attorney No. 3121686)
Angelo Del Marto (Attorney No. 6191333)
Storino, Ramello & Durkin
9501 W. Devon Avenue
Suite 800
Rosemont, Illinois  60018
Telephone:  847-318-9500
Fax:  847-318-9509

# PLAT OF SURVEY
of





LOT 57 IN HADON'S WOODLAND HILLS SUBDIVISION OF THE SOUTH 30 ACRES OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 38 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 6, 1978, AS DOCUMENT 23106182, IN COOK COUNTY, ILLINOIS.

ADDRESS: 6472 APACHE DRIVE, INDIAN HEAD PARK, ILLINOIS

SCALE: 1"=20'

APACHE DRIVE

A=95.00

FENCED AREA
——— =3,900.1
——— =1,266.7

EXISTING RESIDENCE

PROPOSED VILLAGE
FENCE LIMITS

PROPOSED HOME OWNER
FENCE LIMITS

PROPOSED FENCE
LINES
(NOT TO SCALE)

## GENERAL NOTES:

1) THE LEGAL DESCRIPTION HAS BEEN PROVIDED BY THE CLIENT OR THEIR AGENT.

2) THIS SURVEY SHOWS THE BUILDING LINES AND EASEMENTS AS INDICATED BY THE RECORDED PLAT. THIS PLAT DOES NOT SHOW ANY RESTRICTIONS ESTABLISHED BY LOCAL ORDINANCES UNLESS SUPPLIED BY THE CLIENT.

3) BASIS OF BEARING FOR THIS SURVEY IS AS THE NORTH ARROW INDICATES, AND IS SHOWN TO INDICATE THE ANGULAR RELATIONSHIP OF THE BOUNDARY LINES.

4) MONUMENTS, IF SET, DURING THIS SURVEY, REPRESENT THE TRUE CORNERS OF THIS DESCRIPTION AS SURVEYED.

5) LOCATION OF SOME FEATURES MAY BE EXAGGERATED FOR CLARITY. NO EXTRAPOLATIONS MAY BE MADE FROM THE INFORMATION SHOWN HEREON.

6) ONLY COPIES WITH AN ORIGINAL SIGNATURE AND SEAL ARE OFFICIAL LEGAL DOCUMENTS. ALL SURVEYS ARE COPYRIGHTED MATERIALS WITH ALL RIGHTS RESERVED.

STATE OF ILLINOIS )
                  ) S.S.
COUNTY OF COOK )

SURVEY ORDERED BY: STORINO, RAMELLO & DURKIN

PREFERRED SURVEY, INC., DOES HERBY STATE THIS PROFESSIONAL SERVICE CONFORMS TO THE CURRENT ILLINOIS MINIMUM STANDARD FOR A BOUNDARY SURVEY. PROPERTY CORNERS HAVE BEEN SET OR NOT IN ACCORDANCE WITH CLIENT AGREEMENT. DIMENSIONS ARE SHOWN IN FEET AND DECIMAL PARTS THEREOF AND ARE CORRECTED TO A TEMPERATURE OF 68 DEGREES FAHRENHEIT.

GIVEN UNDER MY HAND AND SEAL THIS

5TH DAY OF

MY LICENSE EXPIRES ON 11/30/08

Professional Design Registration #184-002795

## PREFERRED SURVEY, INC.
7845 W. 79TH STREET, BRIDGEVIEW, IL 60455
Phone 708-458-7845 / Fax 708-458-7855
www.psisurvey.com

| Field Work Completed | 08/04/08 | FLD CREW: | KS/VM |
| and Area Surveyed | 11,003.9 Sq. Ft. | CAD: | EH |
| rawing Revised | | | |


EXHIBIT
A

**HINSDALE PEDIATRIC ASSOC., S.C.**
N. A. MOOSABHOY, M.D.    D. J. CAMPBELL, M.D.
K. PESHEK-CAMPBELL, M.D    L. FRANCO, M.D
S. TAPIA, M.D.    R. TREVINO, M.D.

911 N. ELM ST., SUITE 115
HINSDALE, ILLINOIS 60521

TELEPHONE: (630) 323-0890
FAX: (630) 323-9652

October 1, 2007

Kubiesa, Spiroff, Grosselar & Acker, P.C.
533 W. North Ave., Suite 204
Elmhurst, IL 60126

RE: Emily Pall

Dear Mr. Kubiesa:

Reference is made to your representation of the Pall family in regards to the Fence Permit Application made with the Village Of Indian Head Park.

Emily Pall has been my patient since birth. As you know, she has Trisomy 21 (known as Down Syndrome) with related impairments. It has been determined that she has a learning disability, speech impairment and mental retardation. She is in Special Education classes and attends various therapy sessions to assist her impairments. Her parents have acknowledged Emily's condition and have been extremely supportive.

I believe it would be in Emily's best interest to be allowed to play in her yard. She is unable to make appropriate decisions in regards to her safety and I believe Emily requires the boundaries of her environment to be safely designated by a fence. I strongly believe this is a safety issue for Emily and should be considered for her personal welfare.

Sincerely,

Lisa A. Franco, M.D.


EXHIBIT
B